Case 3:20-cv-00096   Document 117   Filed on 05/11/22 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
May 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:20-cv-96

INSURANCE DISTRIBUTION CONSULTING, LLC, *PLAINTIFF*,

v.

FREEDOM EQUITY GROUP, LLC, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is Freedom Equity Group's emergency motion to rescind or construe the settlement agreement. Dkt. 106. The court denies the motion.

## I. Background

Insurance Distribution Consulting (IDC) sued Freedom Equity Group (FEG) for breach of an agreement for consulting services.[1] Dkt. 16. On December 28, 2021, FEG and its principals, Ron Bloomingkemper, Ron Petrinovich, and Bill St. Clair, participated in a mediation with IDC and its

---

[1] The agreement was originally entered between Supreme Alliance LLC and FEG. Supreme Alliance has since assigned the agreement to IDC.

principal, Michael Jones. Counsel for FEG, IDC, and Jones were also present. United States Magistrate Judge Andrew Edison served as mediator. Dkt. 106 at 2.

By the end of the day, the parties had reached a mediated settlement agreement ("MSA"). The MSA expressly provides that it is a "binding and enforceable settlement agreement" and "not an agreement to agree." *See* Dkts. 106-2; 108-1. The MSA also contemplates that the parties would prepare and execute more formal settlement documents, without affecting the finality of the MSA. *Id.* By its own terms, all disputes about the MSA would be resolved by Judge Edison. *Id.*

Such a dispute arose with the first draft of the formal settlement agreement. The draft reflected FEG's understanding that the settlement included not only IDC's release of its claims, but Jones's release of any individual claims by him as well. Dkt. 106 at 3. IDC's counsel contended that the MSA did not cover any release of claims by Jones. *Id.* The parties submitted this issue to Judge Edison for resolution. Dkt. 107 at 2. Judge Edison resolved the dispute in IDC's favor, holding that "Mr. Jones is not required to release claims in his individual capacity." Dkt. 108-2 at 1.

FEG asked Judge Edison to reconsider the decision or, in the alternative, to allow an equitable rescission of the MSA. Dkt. 106 at 3. Judge

Edison denied both requests. *Id.* FEG now moves to rescind the MSA based on the doctrine of remediable unilateral mistake. *Id.* at 4.

## II.   Legal Standard

"A settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced." *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013). "Litigants may not disavow [settlement agreements] thus made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 528 (5th Cir. 1986). "[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir. 1994).

"The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time-consuming litigation." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). An order enforcing a settlement agreement is reviewed for abuse of discretion. *Harmon v. J. Pub. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) (citing *Deville v. United States*, 202 F. App'x 761, 762 (5th Cir. 2006)).

## III. Analysis

FEG requests that the court rescind the MSA based on the doctrine of remediable unilateral mistake, arguing that its principals agreed to settle based on their mistaken understanding that the settlement included Mr. Jones's release of any individual claims he may have against FEG and its principals. Relief from a unilateral mistake is available "when the conditions of remediable mistake are present." *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960). Those conditions are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, *i.e.*, rescission must not result in prejudice to the other party except for the loss of his bargain. *Id.*; *see also Ibarra v. Tex. Emp. Comm'n,* 823 F.2d 873, 889 (5th Cir. 1987).

In response, IDC argues that FEG made a unilateral mistake of law in construing the MSA and that such a mistake will not support equitable rescission. Dkt. 107 at 7. IDC relies in part on Judge Edison's first ruling, in which he determined that the language in the MSA was "clear and unambiguous." Dkt. 106-10 at 2. Because under Texas law, "[a] written

instrument that can be given a certain or definite legal meaning or interpretation is not ambiguous and will therefore be construed as matter of law," *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019), IDC argues FEG made a mistake of law when it misread the language in the MSA. Dkt. 107 at 7. Further, because mistakes of law generally do not justify equitable relief, *Holmes v. Graham Mortg. Corp.*, 449 S.W.3d 257, 266 (Tex. App.—Dallas 2014, pet. denied), IDC maintains FEG is simply out of luck in its bid to equitably rescind or reform the MSA. Dkt. 107 at 7.

The court first addresses the issue of mistake of law versus mistake of fact before turning to whether rescission is proper under a theory of remediable unilateral mistake.

### A. Mistake of Law vs. Mistake of Fact

The Restatement of Contracts defines mistake as a "belief that is not in accord with the facts." RESTATEMENT (SECOND) OF CONTRACTS § 151 (AM. L. INST. 1981). "The belief need not be an articulated one, and a party may have a belief as to a fact when he merely makes an assumption with respect to it, without being aware of alternatives." § 151, cmt. a. The Restatement, however, does not "draw the distinction that is sometimes made between 'fact' and 'law.'" *Id.* cmt. b. Instead, the law as it existed when the contract

was made is treated "as part of the total state of facts at that time." *Id.* "A party's erroneous belief with respect to the law, as found in statute, regulation, judicial decision, or elsewhere, or with respect to the legal consequences of his acts, may, therefore, come within these rules."[2] *Id.*

In *Pollard v. Steffens*, 343 S.W.2d 234, 237 (Tex. 1961), the Supreme Court of Texas opined on the difference between mistakes of antecedent and existing private, legal rights by a party and mistakes of law generally. Normally, the Court held, a mistake of generally applicable law is no ground for equitable relief without any fraud or misconduct. *Id.* But an exception arises when the mistake concerns one's own antecedent and existing private legal rights. *Id.* Such disputes can be resolved by "'treating the mistake as analogous to, if not identical with a mistake of fact.'" *Id.* (quoting POMEROY'S EQUITY JURISPRUDENCE § 849a (5th ed. 1941)).

Since *Pollard*, Texas courts have consistently applied this distinction, with mistakes of law about antecedent legal rights serving as the basis for equitable rescission. *See, e.g., 1st Coppell Bank v. Smith*, 742 S.W.2d 454 (Tex.App.–Dallas 1987, no writ) (rescinding agreement based on mutual mistake of law as to validity of deed of trust); *Plains Cotton Co-op. Ass'n v.*

---

[2] Comment (a) makes clear that a mistake does not encompass a party's prediction or judgment as to events to occur in the future. The erroneous belief must relate to the facts as they exist at the time of making the contract.

*Wolf*, 553 S.W.2d 800, 803 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.) (rescinding sales contract cotton farmers had signed under the mistaken belief they were already contractually bound to sell the cotton before signing any agreement); *see also Emery v. Emery*, 75 S.W.2d 725, 731 (Tex. Civ. App.—Dallas 1934, writ dism'd) (holding equitable relief justified when the parties signed a written contract under the mistaken belief that a prior oral contract, which was enforceable, was unenforceable under the statute of frauds).[3]

A mistake of fact, either mutual or unilateral, can justify equitable relief under certain circumstances. In *Bolle, Inc. v. Am. Greetings Corp.*, 109 S.W.3d 827, 834 (Tex. App.—Dallas 2003, pet. denied), the court held that a mutual mistake about whether the parties intended their settlement agreement to release three California lawsuits never discussed during settlement discussions warranted rescission. The court's rationale rested on the notion that the "intent with which parties contract is an issue of fact." *Id.* (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)).

---

[3] There are limits, however, to *Pollard*'s private/public rights distinction. A party's unilateral mistake over the meaning of a contractual term, which has been held to be a mistake of law, does not justify equitable relief. *See Contact Prods., Inc. v. Dixico Inc.*, 672 S.W.2d 607, 609–10 (Tex. App.—Dallas 1984, no writ) (holding party's mistake about meaning of "present value of the accrued benefits" was unilateral mistake of law due to its own negligence and did not warrant reformation of the agreement).

"When a party alleges mutual mistake, the court should not interpret the language contained in the contract but should determine whether the contract itself is valid . . . [because] [the court] will not enforce a bargain that was never made, regardless of the language in the contract." *Id.* at 833.

But even this proposition has its limits, as was freshly illuminated in *City of The Colony v. North Texas Municipal Water District*, 272 S.W.3d 699, 737 (Tex. App.—Fort Worth 2008, pet. dism'd). In *The Colony*, the court held the plaintiff had failed to show mutual mistake of fact on the intent with which both parties entered into a wastewater-treatment agreement. Instead, the plaintiff presented evidence that only it was mistaken as to the parties' various responsibilities under the contract. *Id.* at 735–36.

Without more, the court held, the plaintiff's unilateral mistake of fact did not justify the contract's rescission. *Id.* The court's decision turned on the kind of mistake the plaintiff made—failing to anticipate matters the contract did not contemplate, such as additional pipeline construction to transport wastewater from The Colony to the Water District's treatment plant. Noting that "an error in predicting a future fact known to be uncertain is not the kind of mistake that will relieve a party from a contract," the court held that equity would "not favor [the plaintiff] for its lack of foresight." *Id.* at 736.

It is no surprise then that Texas courts have consistently found unilateral mistake of fact as justifying equitable relief in only limited circumstances. For example, in *James T. Taylor & Son, Inc. v. Arlington Independent School District*, the Supreme Court of Texas held that a bidder's inadvertent mistake as to a bid amount—a scrivener's error—could give rise to equitable rescission of the contract so long as the conditions of remediable unilateral mistake were met. 335 S.W.2d at 373. In *Fonseca v. Hidalgo County*, 527 S.W.2d 474, 476 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.), the plaintiffs argued the doctrine applied to their mistake in agreeing to a settlement they believed, erroneously, did not apply to an ongoing eminent-domain lawsuit against the county. The *Fonseca* court analyzed the plaintiffs' argument under the remediable-mistake framework but found that the plaintiffs did not satisfy the conditions necessary to rescind the agreement as laid out in *Taylor*. *Id*. at 478.

In *Roland v. McCullough*, 561 S.W.2d 207, 213 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.), the court employed the remediable-mistake framework in a land-sale dispute. But it held that the defendants were not entitled to equitable relief because "a contract may not be avoided on the ground of mistake of fact where it appears that ignorance of the facts was the result of carelessness, indifference, or inattention [and where there is no

fraud]." *Id.*; *see also Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 220 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (applying the framework but declining to grant equitable relief for spouse of deceased employee in suit against employer contesting the validity of release for asbestos-related injury).

Some mistakes, however, do not warrant even consideration of the remediable-unilateral-mistake framework. In *Green v. Morris*, 43 S.W.3d 604, 607 (Tex. App.—Waco 2001, no pet.), the court held that a hospital filing a lien against a patient's insurance settlement—which the patient had not foreseen—was not a mistake which would void the settlement. In elaborating on its decision, the court found that the defense of remediable unilateral mistake did not apply to mistakes predicting future facts known to be uncertain, *e.g.*, whether a subsequent event would make the patient's "settlement less favorable than they had hoped." *Id.* at 609.

### B. Rescission

FEG argues its unilateral mistake was one of fact, but that even if it were a mistake of law, equitable relief is not foreclosed. Dkts. 111 at 13; 106 at 5–7. As the court has already acknowledged, equitable rescission can indeed involve either mistakes of law or fact, but only "when the conditions of remediable mistake are present." *Taylor*, 335 S.W.3d at 373.

The first *Taylor* prong concerns whether the mistake is of so great a consequence that to enforce the contract as made would be unconscionable. *Id.* at 372–73. The parties disagree as to the applicable unconscionability standard. Under Texas law, unconscionability as a defense to the validity of an arbitration agreement or a contract must be satisfied both procedurally and substantively. *See LeBlanc v. Lange*, 365 S.W.3d 70, 88 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 602–03 (Tex. App.—Texarkana 2008, no pet.); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App.—Waco 2005, pet. denied). IDC argues this is the correct standard even for the unconscionability prong of remediable mistake. Dkt. 107 at 8. FEG disagrees, arguing that for remediable mistake, unconscionability is measured in relation to the nature and extent of the claimed mistake. Dkt. 111 at 11.

Case law shows that FEG's position is closer to the mark. *See Taylor*, 335 S.W.2d at 373 (discussing only unconscionability generally and not both procedural and substantive unconscionability); *Flores v. Medline Indus., Inc.*, No. 13-14-00436-CV, 2015 WL 9257070, at *6 (Tex. App.—Corpus Christi Dec. 17, 2015, no pet.) ("Unconscionability may be *either* procedural or substantive in nature and is to be determined in light of a variety of factors." (emphasis added)); *B.D. Holt Co. v. OCE, Inc.*, 971 S.W.2d 618, 620

(Tex. App.—San Antonio 1998, pet. denied) (finding a price difference of $100,000 between mistaken bid and intended bid would be "unconscionable" if enforced but not further discussing unconscionability). Requiring FEG to show both procedural and substantive unconscionability—*i.e.*, the showing required to single-handedly void a contract—would render meaningless the remaining three *Taylor* prongs. As that cannot be the case, FEG need only show either procedural or substantive unconscionability to satisfy the first prong of the *Taylor* test.

Black's Law Dictionary defines unconscionability, in part, as "extreme unfairness." 11th ed. 2019. The Supreme Court of Texas has said that unconscionability "is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). "[I]n general, a contract will be found unconscionable if it is grossly one-sided." *Id.* "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect." *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a). Additional "[r]elevant factors include weaknesses in the contracting process like . . . contractual capacity, fraud, and other invalidating causes." *Id.*

As alluded to above, unconscionability comes in two varieties: procedural and substantive. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). In determining procedural unconscionability, courts look to "the contract formation process and the alleged lack of meaningful choice." *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 858–59 (Tex. App.—Dallas 2010, no pet.). For substantive unconscionability, the grounds must be "sufficiently shocking or gross to compel the court to intercede." *Ski River Dev.*, 167 S.W.3d at 136.

FEG argues that enforcing the MSA would be unconscionable given FEG's mistake about the definition of "parties" giving releases. Dkt. 106 at 9. Without Jones's release of his individual claims, FEG "will receive only partial peace because its principals emphatically believe [Jones] will bring another baseless suit asserting concocted individual claims." Dkt. 106 at 9. Holding FEG to the price it agreed to pay for "complete" peace is unconscionable, FEG argues, when it and its principals will receive only partial peace. *Id.* at 10.

IDC counters that nothing suggests any essential unfairness in how the MSA was reached, nor was there any great flaw in the process. Dkt. 107 at 8. None of the indicia of unconscionability are present: lack of meaningful choice, inequality in the sophistication of the parties, and disparity in

bargaining power. Dkt. 107 at 8–9. Both parties were represented by sophisticated principals with experience in the insurance industry and ample litigation experience, and aided by capable counsel in an arms-length, protect-yourself-at-all-times negotiation in which their interests were clearly adverse. *Id.* at 9. Moreover, FEG had a meaningful choice: it could agree or not agree to the proposed terms. *Id.* And there was certainly no disparity in bargaining power. *Id.* Accordingly, IDC argues, FEG cannot show procedural unconscionability. *Id.*

As for substantive unconscionability, IDC maintains there is nothing unfair about the MSA. FEG has obtained a "complete release from the only other party to the litigation as well as the non-party predecessor [Supreme Alliance] to the other party." *Id.* Jones asserted no claims on his personal behalf related to the facts underlying the lawsuit. That he did not individually release claims he never made is simply not the kind of one-sidedness that amounts to unconscionability. *Id.* at 910.

The court agrees with IDC. There is nothing oppressive, unfairly surprising, shocking, or gross about the bargain the parties struck. And nothing supports the notion that the mediation process was procedurally unconscionable. FEG left the mediation with a release from the only other party to this litigation: IDC. That FEG incorrectly assumed Jones, in his

individual capacity, was included in the term "parties" does not warrant a finding of substantive unconscionability. Because FEG's failure to satisfy the first *Taylor* prong is dispositive, the court does not address the remaining three prongs. FEG is not entitled to rescission of the MSA based on the doctrine of remediable unilateral mistake.

*   *   *

For the above reasons, the court denies FEG's emergency motion to rescind or construe the settlement agreement. Dkt. 106. The court grants IDC's emergency motion to enforce the MSA, Dkt. 107, and overrules as moot IDC's objections to FEG's evidence, Dkts. 107 at 3–5; 109 at 1. The court also denies as moot FEG's motion to strike IDC's reply. Dkt. 113.

Signed on Galveston Island this 11th day of May, 2022.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE